OPINION OF THE COURT
Edward H. Lehner, J.
The primary issue raised in each of these two CPLR article 78 proceedings, consolidated herein for disposition, is whether the discharge of petitioners by the Department of Sanitation (the Department) was effective prior to the vesting of a deferred retirement allowance (the allowance) under section 13- *227 173.1 of the Administrative Code of the City of New York (the Administrative Code).
On July 19, 1989 each petitioner filed an application for the allowance with the Department and respondent New York City Employees’ Retirement System (the System). Each had then completed over 15 years of service in the Department and stated an intention to resign effective August 18, 1989.
Section 13-173.1 of the Administrative Code provides that the allowance vests unless the applicant resigns, dies or is dismissed within 30 days after the filing of the application. The section reads, in pertinent part, as follows:
"a. Any member, other than a member who is subject to article fifteen of the retirement and social security law, who: "(1) on or after July first, nineteen hundred eighty-four discontinues sanitation service other than by death, retirement or dismissal; and
"(2) is a sanitation member at the time of such discontinuance; and
"(3) prior to such discontinuance, completed fifteen or more years of allowable sanitation service, at least five of which immediately preceded such discontinuance; and
"(4) at least thirty days prior to the date of such discontinuance, files with the board a duly executed application for a deferred retirement allowance hereunder, which filing shall be made not earlier than December eighteenth, nineteen hundred eighty-four; and
"(5) does not withdraw his or her accumulated deductions in whole or in part; shall have a vested right to receive a deferred retirement allowance as provided in this section.
"b. (1) Such deferred retirement allowance shall vest automatically upon such discontinuance.”
Thus, unless petitioners were effectively dismissed by August 18, 1989, their allowances vested. Respondents contend that both petitioners were dismissed on August 17 after having been found guilty, in administrative hearings, of having accepted unlawful cash payments for permitting illegal dumping of commercial waste. The payments received by each petitioner totaled less than $100. In light of the factual issues raised in connection with petitioners’ claims that the dismissals did not occur until after August 18, a hearing was held on March 23,1990.
With respect to petitioner Waldeck, the testimony showed *228 that Pansy Mullings, the Deputy Commissioner for Trials, issued a report dated August 15 recommending dismissal. Subjoined to the recommendation, and under the word "Approved”, is the signature of Brendon Sexton, the Commissioner of the Department. On the copy of this document offered by petitioners, the date appearing adjacent to his signature was "8/19/89”. Below that date appears his initials, with the date again written "8/19/89”.
Respondents offered in evidence a second copy of the signature page on which the date written next to the signatures of both Sexton and Mullings was August 17. Commissioner Mullings, who was the only witness called by respondents, testified that the reason for the two different signature pages was that after Commissioner Sexton dated the approval of the dismissal at "8/19/89”, it was noted that he had placed that date on the document in error as the date then was Thursday, August 17, and when this was called to his attention he sought to correct the error, but instead placed the same date "8/19/89” under the prior date and added his initials. It is asserted that this mistake was not noticed until after the document was placed in the mail to Waldeck. Mullings testified that after the error was called to her attention on August 17, she had a second signature page prepared which she signed and dated August 17, and then presented it to Commissioner Sexton who also signed and placed that date next to his signature. She stated that she believes that a copy of the revised signature page was also mailed to Waldeck. However no competent proof was received that indicated the method or dates of any mailings.
The System denied Waldeck’s application for the allowance because he did not meet the requirement that the discontinuance of his services in the Department prior to August 18 occur for reasons "other than by death, retirement or dismissal”.
With respect to petitioner Barbaro, the evidence showed that the signature page received by him was obliterated, apparently the result of defective copying, and could not be read, and further that several pages of the report of Commissioner Mullings were omitted.
Initially it is observed that although Commissioner Sexton was still in office on the date of the hearing, he was not called to testify even though the court had previously advised the Assistant Corporation Counsel that the hearing would be scheduled for a date convenient to the Commissioner. Clearly *229 he would be the person best able to explain the discrepancies in the dates on the Waldeck dismissal. It is not disputed that he had the authority to date his approval of the recommendation for discharge as of August 19 so as to enable the employee to obtain the allowance. The record shows that in 19 Vz years of service in the Department, Waldeck had no prior disciplinary history, and had used only 84 days of sick leave. Letters from his supervisors indicated that he was a good worker.
Further, no excuse was presented by respondents for not presenting a witness familiar with the mail logs to testify as to when and how the notices were mailed to petitioners, nor was proof offered with respect to the claimed efforts to personally serve petitioners with copies of the orders of dismissal.
Respondents contend that "there is no requirement in the law that an employee receive, or be mailed, any report and recommendation prior to the dismissal becoming effective [and thát all] that is required is that the hearing transcript and the determination be filed with the agency, with the Civil Service Commission, and then be furnished to the employee 'upon request’ ”. Civil Service Law § 75 (3) is cited to support this proposition.
Although respondents are correct in stating that said subdivision requires a government agency to take the aforementioned steps upon a finding of guilt, it is noted that the statute contains no provision specifying when the dismissal is effective. Thus, even if the requirements of the subdivision were complied with, which respondents failed to establish as there was no proof of when the determination was filed with the Civil Service Commission, that would not necessarily mean that the dismissal was effective when signed for the purposes of section 13-173.1.
Subdivision (1) of section 76 of the Civil Service Law provides that an appeal from a punishment of dismissal must be made to the appropriate civil service commission "within twenty days after service of written notice of the determination to be reviewed, such written notice to be delivered personally or by registered mail to the last known address of such person”.
Since the most logical interpretation of these sections is to consider the date from which the time to appeal is measured to be the date as of which discharge is deemed to have occurred for purposes of section 13-173.1, the court finds that *230 the government agency must serve the employee with a copy of the determination in the manner required to commence the time running for an administrative appeal.
There being no proof that service of the dismissal notices were made in the manner required by section 76, the court concludes that petitioners were not effectively dismissed on or before August 18. Hence they are entitled to the vested retirement allowances due under section 13-173.1 of the Administrative Code.